EMMA J. PORTER, administratrix, *vs.* LEON E. SORELL & another.

Hampden.    April 7, 1932. — October 26, 1932.

Present: RUGG, C.J., CROSBY, WAIT, & DONAHUE, JJ.

*Negligence,* Causing death.   *Joint Tortfeasor.*

All statutes of this Commonwealth creating rights of action grounded on negligence causing the death of a human being have the common, uniform and unaltered characteristic that the amount recoverable is fixed, not on the theory of compensating the surviving relatives of the deceased, but solely on the basis of the quantity of guilt of the defendant in the circumstances of the killing.

This court cannot by construction add a limitation on such punishment which the Legislature did not see fit to establish.

The imperative purpose of such statutes that by means of an action of tort punishment shall be inflicted on a negligent causer of death, even though the negligence of others likewise played a part in such causation, does not permit the application in such actions of the long established common law rule that the satisfaction of a judgment against one of two joint or concurrent tortfeasors discharges the other.

After an administrator had recovered judgment in each of two actions of tort under G. L. (Ter. Ed.) c. 229, § 5, respectively against those responsible for the negligent operation of two motor vehicles which had caused the death of the plaintiff's intestate, one of such defendants satisfied in full an execution issued on the judgment against him.   The plaintiff then brought a suit in equity under G. L. (Ter. Ed.) c. 214, § 3 (10), against the other defendant and his insurer to

enforce the judgment recovered against such defendant, who contended that he was released and discharged by reason of the satisfaction of the judgment against his joint tortfeasor. *Held,* that

(1) The payment by one concurrent wrongdoer of his penalty determined in accordance with G. L. (Ter. Ed.) c. 229, § 5, did not, within the limitations set by the statute, affect the fundamental obligation of another such wrongdoer to pay the particular penalty fixed for his own wrong;

(2)   A decree for the plaintiff was proper.

BILL IN EQUITY, described in the opinion, filed in the Superior Court against Leon E. Sorell and Liberty Mutual Insurance Company on July 21, 1931. The suit was heard by *Lummus,* J., upon a case stated. By his order, a final decree was entered directing the defendant insurance company to pay the plaintiff $4,210.19 and costs. That defendant appealed.

*E. W. Sawyer,* for the defendant Liberty Mutual Insurance Company.

·   *J. E. Kerigan,* for the plaintiff.

DONAHUE, J.   The plaintiff's intestate was killed on or about May 19, 1929, in a collision between an automobile owned and operated by the defendant Sorell and a truck operated by an employee of the Mexican Petroleum Corporation. In separate suits brought under G. L. (Ter. Ed.) c. 229, § 5, by the plaintiff as administratrix against the defendant Sorell and the Mexican Petroleum Corporation for negligently causing the death of her intestate, she recovered verdicts of the same amount. Both cases went to judgment. The Mexican Petroleum Corporation paid the full amount of the execution which issued on the judgment against it, namely, $4,026.57 damages and $27.65 costs, and the execution was indorsed as "satisfied in full." No part of the judgment for $4,026.57 damages and $23.25 costs which was entered in the suit against the defendant Sorell has been paid. The defendant Sorell at the time of the death of the plaintiff's intestate held a policy of motor vehicle liability insurance issued by the defendant insurance company under the provisions of St. 1925, c. 346, insuring him against loss or damage by reason of liability on his part to pay damages on account of bodily injuries or

death from an accident caused by his automobile through his negligence. The plaintiff as administratrix has brought a bill in equity to reach and apply the obligation of the defendant insurance company under the policy issued to the defendant Sorell in satisfaction of the judgment recovered against him by the plaintiff administratrix for the death of her intestate. (G. L. [Ter. Ed.] c. 214, § 3 [10].) The trial was on a case stated and the case comes before us on the appeal of the defendant insurance company from a final decree ordering it to pay the plaintiff the sum of $4,210.19 in satisfaction of the judgment against the defendant Sorell and costs in this suit amounting to $20.60. The appeal presents for discussion and decision the question whether the satisfaction by one concurrent tortfeasor of a judgment against him in an action for negligently causing death bars the collection of a judgment recovered against another concurrent tortfeasor in an action for negligently causing the same death where the sum of the two judgments is less than $10,000. What is herein said is confined to that precise question. *Vigeant* v. *Postal Telegraph Cable Co.* 260 Mass. 335, 343.

The plaintiff as administratrix has obtained the verdict of a jury against the defendant Sorell in an action brought under G. L. (Ter. Ed.) c. 229, § 5, to recover damages for the death of her intestate. That verdict represents a jury's determination of the guilt of Sorell and also its determination of the amount of the penalty to be paid by Sorell for his wrongful act. The statute on which the suit against Sorell was grounded is one of many legislative enactments during a period of nearly two and a half centuries which have created in this Commonwealth what did not exist at common law, rights of action for negligence which causes the death of a human being. The history of this legislative system of death statutes is told with adequate detail in *Hudson* v. *Lynn & Boston Railroad,* 185 Mass. 510, and *Brooks* v. *Fitchburg & Leominster Street Railway,* 200 Mass. 8. In the various statutes there have been and are differences as to the grounds of liability and the procedure for the determination of liability, the burden of proof

as to the care used by the deceased, the amount recoverable, the person or persons entitled ultimately to receive such amount and the matter of costs. Whatever these variances now are or in the past have been, all the death statutes have this common, uniform and unaltered characteristic that the amount recoverable is fixed, not on the theory of compensating the surviving relatives of the deceased, but solely on the basis of the quantity of guilt of the defendant under the circumstances of the killing. From the time of the passage of St. 1786, c. 81, § 7, down to 1881 (St. 1881, c. 199, Pub. Sts. c. 112, § 212), the only remedy provided by statute was by indictment. *Grella* v. *Lewis Wharf Co.* 211 Mass. 54, 58. Such cases were prosecuted by the Attorney General (*Commonwealth* v. *Boston & Worcester Railroad,* 101 Mass. 201, 202), or by a district attorney (*Commonwealth* v. *Boston & Worcester Railroad,* 11 Cush. 512, 514), or by an attorney allowed to appear and represent the Commonwealth (*Commonwealth* v. *Eastern Railroad,* 5 Gray, 473). By St. 1786, c. 81, § 7, if a defect in a way caused death a municipality was "liable to be amerced in *one hundred pounds.*" Later statutes referred to the money payment for death as a "fine." Beginning with St. 1881, c. 199, statutes have been passed which provide an action of tort as the only remedy in all classes of death actions except in the case of railroads and street railways where the remedy is either by indictment or by an action of tort. In providing the remedy by an action of tort the Legislature "retained, in the use of the words 'damages . . . to be assessed with reference to the degree of culpability,' the distinguishing feature of a fine imposed by court after a conviction upon an indictment." *Johnston* v. *Bay State Street Railway,* 222 Mass. 583, 584. While such an action of tort differs in important particulars from the earlier remedy of indictment (*Kelley* v. *Boston & Maine Railroad,* 135 Mass. 448), so far as the character of the liability of the defendant goes "No distinction . . . can be made between an indictment and an action of tort" brought under the death statutes. *Merrill* v. *Eastern Railroad,* 139 Mass. 252, 257. *Hudson* v. *Lynn & Boston Railroad,* 185 Mass. 510, 516. *Arruda* v. *Director General of Railroads,* 251

Mass. 255, 260.   The conclusion is unavoidable that the death statutes in providing a right of action in tort "gave a civil remedy for the recovery of a penalty imposed by way of punishment."   *Hudson* v. *Lynn & Boston Railroad,* 185 Mass. 510, 517.   In decisions in cases brought under the same statute on which the action against Sorell was based (G. L. [Ter. Ed.] c. 229, § 5), the statute is described as being "penal" (*McCarthy* v. *William H. Wood Lumber Co.* 219 Mass. 566, 568), or "punitive" (*Brown* v. *Thayer,* 212 Mass. 392, 399, *Putnam* v. *Savage,* 244 Mass. 83, 85), in nature, and as providing a "penalty" (*Nugent* v. *Boston Consolidated Gas Co.* 238 Mass. 221, 237, *Sterling* v. *Frederick Leyland & Co. Ltd.* 242 Mass. 8, 13, *Dzura* v. *Phillips,* 275 Mass. 283, 290), or a "fine" (*Turnquist* v. *Hannon,* 219 Mass. 560, 562, *Leahy* v. *Standard Oil Co. of New York,* 220 Mass. 90, 95, *Eldridge* v. *Barton,* 232 Mass. 183, 186). Although by the provision that the penalty when assessed and paid shall be turned over to the persons designated to receive it the death statutes have a remedial aspect (*Sullivan* v. *Hustis,* 237 Mass. 441, 448), there is manifested in our death statutes in their present as much as in their earlier forms the clear legislative intent that by means of a judgment in an action of tort adequate punishment shall be meted out to the negligent killer of a human being.

"The guiding principle for the interpretation of a statute is that it must be construed, if reasonably possible, so as to effectuate the purpose of the framers."   *Commonwealth* v. *S. S. Kresge Co.* 267 Mass. 145, 148.   The definite purpose of the death statutes to punish those who through negligence cause the death of a human being would be only partially accomplished if one of two persons wrongfully causing death escaped punishment.   Like all punitive legislation the death statutes prescribe the extent of punishment.   The statute on which the action against Sorell was based places a minimum limitation of $500 and a maximum limitation of $10,000, between which extremes the amount of the penalty is to be fixed with reference to the degree of culpability of the wrongdoer.   *Nugent* v. *Boston Consolidated Gas Co.* 238 Mass. 221, 237.   There was no

action at common law for wrongfully causing death, and the Legislature in creating a remedy might have adopted the theory that compensation should be given the surviving relatives of the person killed, as did Lord Campbell's act (9 & 10 Vict. c. 93), but "the Massachusetts acts are exactly what Lord Campbell's act is not." (*Hudson* v. *Lynn & Boston Railroad*, 185 Mass. 510, 519. *Arruda* v. *Director General of Railroads*, 251 Mass. 255, 263.) Their basic theory as to damages is punishment, not compensation. Even on a theory of punishment the General Court might, if such was its purpose, have placed another limitation on the matter of punishment by providing that the punishment of one of two negligent takers of a human life should absolve the other from the consequence of his wrongful act. (For a somewhat similar provision in the statute permitting recovery of a forfeiture for color or race discrimination see G. L. c. 272, § 98; *Bryant* v. *Rich's Grill*, 216 Mass. 344.) This the Legislature has not done in the death statutes. This court cannot by construction add a limitation on punishment which the Legislature did not see fit to establish. See *Arruda* v. *Director General of Railroads*, 251 Mass. 255, 263; *Morse* v. *Boston*, 253 Mass. 247, 252; *Martell* v. *Moffatt*, 276 Mass. 174, 179. The contention of the defendant insurance company in effect is that although the defendant Sorell has been adjudged guilty of wrongfully causing a death and the extent of his blame has been fixed by the verdict of a jury, he is absolved from the payment of the penalty imposed upon him by the fact that another also guilty of causing that death first paid the individual penalty imposed upon it. On principle such contention cannot be sustained unless the manifest purpose of the statute be disregarded. If both drivers of the vehicles involved in the death of the plaintiff's intestate had been tried and convicted in a criminal court of the same criminal offence committed at the time of the accident the fortuitous circumstance that the other driver had been first sentenced and paid his penalty would not allow the defendant Sorell to walk off without waiting for his sentence or without paying his deserved penalty. The death statutes have

as a purpose punishment. Punishment is a personal thing. There can be no vicarious atonement for the wrongful act of killing a human being which act by the death statutes the Legislature manifestly intended to punish.

The imperative purpose of the death statutes that by means of an action of tort punishment shall be inflicted on a negligent causer of death, even though the negligence of others likewise played a part in such causation, does not permit the application in such actions of the long established common law rule that the satisfaction of a judgment against one of two joint or concurrent tortfeasors discharges the other. At common law the object of an action of tort for personal injuries is the indemnification of the person injured, by providing him with the monetary equivalent of the loss which he has sustained. The death statutes have no such purpose. In an action under those statutes the verdict of a jury for a plaintiff must be reached without the slightest consideration of any element of compensation, and the amount of the verdict represents simply the extent or quantity of the defendant's blame. In separate actions against two or more who have negligently caused death, the verdict in each case expresses only the individual liability of each particular defendant and if one pays the amount of a verdict against him he is paying only his individual penalty. It has been said that the common law rule that the satisfaction of a judgment against one of two joint or concurrent tortfeasors bars recovery against the other "apparently is based upon the nature of their liability, which is one and indivisible. Accordingly, if one of them is discharged, or satisfies the cause of action, there remains no foundation for an action against any one." *Muse* v. *DeVito,* 243 Mass. 384, 388. *Matheson* v. *O'Kane,* 211 Mass. 91, 94. The nature of the liability of two negligent slayers under the death statutes as expressed by the verdicts against them is not one and indivisible. It is just the opposite. In nature their liability necessarily, in view of the punitive purpose of the statutes, is divisible, since each is liable to the extent only of his individual culpability. The foundation of an action under the death

statutes is the punishment of negligent causers of death. The payment by one concurrent wrongdoer of his penalty determined in accordance with the statutes does not, within the limitations set by the statutes, affect the fundamental obligation of another such wrongdoer to pay the particular penalty fixed for his own wrong. Statements in other cases as to the basis of the common law rule to the effect that "The law will not permit a party to receive anything more than a compensation for an injury. · Where there has been only one wrongful act, there can be but one full and complete indemnity" (*Stone* v. *Dickinson*, 5 Allen, 29, 32, *Cormier* v. *Worcester Consolidated Street Railway*, 234 Mass. 193, 196), that otherwise the "whole damage" could be collected from several (*Brown* v. *Cambridge*, 3 Allen, 474, 476), that "Each would be liable to pay to . . . [the plaintiff] the full amount of damages which she had sustained" (*Aldrich* v. *Parnell*, 147 Mass. 409, 410), indicate that the reason for the common law rule where damages are awarded as an indemnity or compensation is not applicable in cases brought under the death statutes whose object is punishment.

There are opinions in cases brought under the· death statutes where may be found statements to the effect that there can be but one satisfaction in damages or one satisfaction of a judgment. See *Oulighan* v. *Butler*, 189 Mass. 287, 293; *D'Almeida* v. *Boston & Maine Railroad*, 209 Mass. 81, 87; *Brown* v. *Thayer*, 212 Mass. 392, 397; *Clark* v. *New England Telephone & Telegraph Co.* 229 Mass. 1, 6. In none of these cases was the matter of the satisfaction of judgments or of a release before the court. In the first and last there was only one defendant. In the second there were counts for conscious suffering where the general common law rule that the satisfaction of a judgment against one joint or concurrent tortfeasor bars satisfaction of judgment against another was clearly applicable. In *D'Almeida* v. *Boston & Maine Railroad,* 209 Mass. 81, 87, Mr. Justice Braley, after stating that the plaintiff administrator was entitled to maintain an action against all who contributed to the injury and death of his intestate, added,

"although . . . [the administrator] could have but one satisfaction in damages." This statement is referred to in the opinion in *Boott Mills* v. *Boston & Maine Railroad,* 218 Mass. 582, 591, 592, where the conclusion was reached that it was an unavoidable consequence, from the fact that damages in a death action are punitive and not compensatory, that one who has been punished by paying the amount of a verdict against him cannot recover over from another who has contributed to the wrongful conduct on which the verdict was founded. The court there says, as to the above quoted statement from the opinion in *D'Almeida* v. *Boston & Maine Railroad:* "If it is inconsistent with the reasoning of the present opinion, to that extent it is not followed." The question here decided was presented in *D'Almeida* v. *Boston & Maine Railroad,* 224 Mass. 452, 455, but the court, holding that the plaintiff was estopped, did not find it necessary to pass upon it. In the case of *Shapiro* v. *Lyon,* 254 Mass. 110, the defendants' offer to prove the entry of an agreement of "Neither Party" in an action brought by the plaintiff administratrix to recover for the death of her intestate against a concurrent tortfeasor was excluded. The release was not pleaded and it was held that this alone justified the exclusion of the proffered evidence. The opinion states, as a further ground for its exclusion, the failure of any offer to prove that any consideration was paid for the agreement. This is not authority for the proposition that if there had been such an offer of proof the exclusion of the evidence would not have been proper. None of the cases cited in this paragraph governs the decision here made that the satisfaction of the judgment against the Mexican Petroleum Corporation does not bar the collection of the amount of the judgment against the defendant Sorell. Since he is liable, the decree was properly entered against his insurer.

*Decree affirmed with costs.*